**TEXTILE PROCESSORS, SERVICE TRADES, HEALTH CARE, PROFESSIONAL AND TECHNICAL EMPLOYEES INTERNATIONAL UNION and Anthony Griese, Trustee of Local 129, Plaintiffs,**

v.

**TEXTILE PROCESSORS, SERVICE TRADES, HEALTH CARE, PROFESSIONAL AND TECHNICAL EMPLOYEES INTERNATIONAL UNION, Local 129, Defendant.**

No. 99–71877.

United States District Court,
E.D. Michigan,
Southern Division.

May 19, 1999.

Bruce A. Miller, Detroit, MI, for plaintiff.

Samuel C. McKnight, Southfield, MI, for defendant.

## OPINION AND ORDER DENYING PLAINTIFFS' MOTION FOR INJUNCTIVE RELIEF AND GRANTING DEFENDANT'S MOTION TO DISMISS

ROSEN, District Judge.

### I. *BACKGROUND*

This case is presently before the Court on a Motion for Temporary Restraining Order filed by Plaintiffs, Textile Processors International Union ("International") and Trustee Anthony Griese, on April 15, 1999.[1] Plaintiffs bring this action pursuant to § 301 of the Labor Management Relations Act ("LMRA"), 29 U.S.C. § 185, to enforce an emergency trusteeship imposed by the International on Defendant, Local 129, to prevent Local 129 from seceding from the International and affiliating with UNITE, an AFL—CIO based international union. In response, Defendant has filed a Motion to Dismiss, arguing that § 302 of the Labor Management Reporting and Disclosure Act ("LMRDA"), 29 U.S.C § 462, precludes an international from imposing a trusteeship to prevent the secession of a local affiliate as a matter of law.

When presented with the Verified Complaint for Preliminary Injury and Motion for Temporary Restraining Order on April 15, 1999, the Court informed the parties that it would schedule an expedited hearing on Plaintiffs' request for injunctive relief on April 16, 1999. Defendant then filed its Motion to Dismiss on the morning of April 16, raising legal issues that in all material respects overlap those raised by Plaintiffs' request for injunctive relief. Accordingly, because of the overlap in the parties' motions and because the material facts necessary to the final resolution of this action are not in dispute, the Court orders a dispositive hearing of this case, with respect to the final merits of injunctive relief, advanced and consolidated with the April 16, 1999 hearing on the parties' cross-motions pursuant to Fed.R.Civ.P. 65(a)(2).

Having heard the oral arguments of counsel at the April 16, 1999 hearing, and having reviewed the briefs and supporting documents submitted by the parties, the Court is now prepared to rule on the pending motions. This Opinion and Order sets forth the Court's final ruling.

### II. *FINDINGS OF FACT*

The material facts of the present case are undisputed and straightforward. At all times relevant hereto, Local 129 was a subordinate body of the Chicago, Illinois based Textile Processors International Union, with its principal officers located in Detroit, Michigan. In late March/early

---

1. The Motion for Temporary Restraining Order was filed along with Plaintiffs' Verified Complaint for Preliminary Injunction on April 15, 1996.

April 1999, the officers of Local 129 entered into a tentative affiliation agreement with UNITE, which was unanimously approved by Local 129's Executive Board. On April 2, 1999, a notice was mailed to Local 129 members, informing them of a secret ballot vote, scheduled for April 18, 1999 at 5:00 p.m, to secede from the Textile International Union and affiliate with UNITE. [Compl. Exhibit B].

Sometime around April 13, 1999, International General President Frank Scalish reviewed materials issued by Local 129 concerning disaffiliation and determined that an emergency trusteeship was required to prevent Local 129 from seceding. Art. VI, Sec. 1 of the Textile International Union Constitution grants the General President broad powers to impose trusteeships prior to a hearing where "in the judgment of the General President an emergency situation exists within the Local Union or other subordinate body." [2] [Constitution, pp. 19–20]. After concluding that an emergency situation existed, General President Scalish appointed Mr. Griese to serve as a Temporary Trustee and properly issued a Notice of Trusteeship to Local 129 on April 13, 1999. [Compl. Exhibit C]. When Local 129 refused to recognize the trusteeship, Plaintiffs initiated the instant action to enforce the trusteeship on April 15, 1999.

## III. CONCLUSIONS OF LAW

### A. Standards Applicable To Motions to Dismiss and for Injunctive Relief

In considering a motion to dismiss under Fed.R.Civ.P. 12(b)(6) for failure to state a claim upon which relief can be granted, the Court must accept the well-pleaded factual allegations set forth in the plaintiff's complaint as true. *See, Morgan v. Church's Fried Chicken,* 829 F.2d 10, 12 (6th Cir. 1987) (citing *Scheuer v. Rhodes,* 416 U.S. 232, 236, 94 S.Ct. 1683, 40 L.Ed.2d 90

(1974)); *Westlake v. Lucas,* 537 F.2d 857, 858 (6th Cir.1976). However, the Court need not accept as true legal conclusions or unwarranted factual inferences. *See, Morgan, supra; Westlake, supra. See also, Blackburn v. Fisk University,* 443 F.2d 121, 124 (6th Cir.1971) (the court is "required to accept only well-pleaded facts as true, not the legal conclusions that may be alleged or that may be drawn from the pleaded facts.")

■ In considering a request for a preliminary injunction, the Court must consider and balance: (1) the likelihood of plaintiff's success on the merits; (2) whether the injunction will save the plaintiff from irreparable injury; (3) whether the injunction would harm others; and (4) whether the public interest would be served by the injunction. *In re DeLorean Motor Company,* 755 F.2d 1223, 1228 (6th Cir.1985). Fed.R.Civ.P. 52 requires the Court to make specific finding as to each factor, "unless fewer are dispositive of the issue." *Id.*

### B. LMRDA § 302 Precludes an International from Imposing a Trusteeship on a Local to Prevent Secession

Under well-established law, the Textile Processors' Constitution forms a contract between the International Union and Local 129, the provisions of which the International may seek to enforce in federal court under § 301(a) of the LMRA, which provides:

> Suits for violation of contracts between an employer and a labor organization representing employees in an industry affective commerce as defined in this chapter, or between any such labor organizations, may be brought in any district court of the United States having jurisdiction of the parties, without respect to the amount in controversy or

---

**2.** The Constitution goes so far as to authorize a trusteeship if the "General President has or receives information which leads him to believe that ... a Local Union ... is being

conducted in such a manner as to jeopardize the interests of the International Union." [Constitution, p. 19].

without regard to the citizenship of the parties.

29 U.S.C. § 185(a); *International Brotherhood of Boilermakers v. Olympic Plating Industries, Inc.*, 870 F.2d 1085, 1088 (6th Cir.1989); *International Brotherhood of Boilermakers v. Local Lodge 714*, 845 F.2d 687, 691 (7th Cir.1988).[3]

As noted above, Art. VI, Sec. 1 of the Textile Processors' Constitution grants the International extensive powers to impose trusteeships over local affiliates, which contractual powers the International may seemingly enforce under LMRA § 301. Despite this broad grant of power, however, the International does not possess unfettered authority to impose trusteeships over its locals for any reason stated in its Constitution. Rather, the trusteeship must also further one of the four proper purposes enumerated in § 302 of the LMRDA, which provides:

Trusteeships shall be established and administered by a labor organization over a subordinate body only in accordance with the constitution and bylaws of the organization which has assumed trusteeship over the subordinate body and for the purpose of [1] correcting corruption or financial malpractice, [2] assuring the performance of collective bargaining agreements or other duties of a bargaining representative, [3] restoring democratic procedures, or [4] otherwise carrying out the legitimate objects of such labor organization.

29 U.S.C. § 462.[4] Thus, even if a trusteeship complies with the terms of a union constitution, LMRDA § 302 acts to limit an international's contractual powers to impose trusteeships over its local affiliates.[5] As explained by the Seventh Circuit:

Section 302 ... does not confer any powers on parent unions (as distinct from "subordinate bod[ies]"); it merely limits the authority of those unions to exercise their contractual rights to impose trusteeship on their local affiliates.... *Within the limits fixed by the statute* the union can exercise whatever powers of imposing trusteeships it enjoys by virtue of its contractual relationships with its affiliates. The enforcement of a trusteeship is therefore a contract remedy which the union can seek under section 301 together with any ancillary relief of an equitable character that may be necessary to make the trusteeship effective.

*Boilermakers v. Local Lodge 714*, 845 F.2d at 691 (emphasis added).

■ Returning to the present case, Plaintiff's Complaint does not assert that the trusteeship is necessary (1) to correct corruption or financial malpractice by Local 129;[6] (2) to assure the performance of

---

**3.** Defendant does not dispute the Court's jurisdiction under LMRA § 301, or the fact that it is contractually bound by the terms of the Constitution, to the extent that such terms comply with federal labor law.

**4.** This section is also referred to as § 302 of the Landrum–Griffin Act.

**5.** At the outset of oral argument, Plaintiffs argued that the terms of the Textile Processors International Union Constitution controlled in the instant case. In essence, Plaintiffs argued that LMRDA § 302 amounted to nothing more than a default provision, which a local affiliate could opt-out of by voluntarily agreeing to be bound by the terms of an international's constitution. After the Court noted that it could not simply ignore federal labor law, Plaintiffs quickly abandoned this argument.

**6.** Although not raised in the Complaint or the Motion for a Temporary Restraining Order, at oral argument Plaintiffs asserted that the issue of corruption/financial malpractice is inexorably intertwined with secession, in that Local 129 maintains control over assets belonging to the International. As noted by Judge Posner, however, such an assertion is not sufficient to bring the instant trusteeship within LMRDA § 302 unless financial malpractice constitutes a "bona fide" purpose of the trusteeship. *International Brotherhood of Boilermakers v. Local Lodge 714*, 845 F.2d at 693. In the present case, Plaintiff's own allegations make clear that the purpose of the trusteeship was to prevent the secession of Local 129.

collective bargaining agreements; or (3) to restore democratic procedures.[7] Rather, Plaintiffs assert that the trusteeship aims to prevent Local 129 from "affiliat[ing] with a rival labor organization in violation of the Union Constitution."[8] [Complaint, ¶ 1]. Accordingly, the enforceability of the trusteeship in the instant case turns on whether preventing the secession of a local constitutes a "legitimate objective" of the International under LMRDA § 302.

Although the Sixth Circuit has not addressed this precise issue, numerous other circuits have, uniformly finding that preventing the secession of a local affiliate does not constitute a legitimate objective of a labor organization. *AFL—CIO Laundry and Dry Cleaning International Union v. AFL—CIO Laundry*, 70 F.3d 717, 719 (1st Cir.1995); *International Brotherhood of Boilermakers v. Local Lodge 714*, 845 F.2d at 694; *Benda v. Grand Lodge of International Association of Machinists & Aerospace Workers*, 584 F.2d 308, 317 (9th Cir.1978); *Local Union 13410 v. United Mine Workers*, 475 F.2d 906, 912 (D.C.Cir. 1973); *United Brotherhood of Carpenters and Joiners of America v. Brown*, 343 F.2d 872, 883 (10th Cir.1965). In an extremely well-reasoned Seventh Circuit decision, Judge Posner explained the reasoning for these decisions as follows:

> The few cases that have opined on the question agree that a union's "legitimate objects" in imposing a trusteeship do not include preventing the secession of its locals, unless one of the other purposes in the statute (for example, preventing disruption of collective bargaining, as in *Executive Board Local 1302 v. United Brotherhood of Carpenters & Joiners*, 477 F.2d 612 (2d Cir.1973)) would be thwarted by the secession. These decisions are plausibly related to the stated purpose of the Landrum–Griffin Act, which is to promote democratic control

of unions. The ability of a local union to disaffiliate and join another union, like the ability of a consumer to switch to another seller, facilitates competition among unions. The word "legitimate" is not defined in the statute or illuminated by the legislative history, which emphasizes the legitimacy of using the trusteeship device to rid unions of Communists … but it draws meaning from the statute's purpose. To read section 302 as authorizing the imposition of a trusteeship to prevent secession regardless of the reasons for the secession would serve that purpose poorly.

*Boilermakers v. Local Lodge 714*, 845 F.2d at 694 (internal citations omitted).

Having carefully considered Judge Posner's analysis, and the decisions from other circuits reaching the same result, the Court finds the logic of these cases compelling, and further finds no basis in law, fact, or public policy for embarking upon the course urged by Plaintiff of granting internationals wholesale superintending authority over locals. The Landrum–Griffin Act seeks to promote the democratic control of unions and to foster competition among various labor organizations to ensure that union members receive high quality representation. To allow an international to impose a trusteeship solely to prevent the secession of a local union would clearly undermine the purpose of the Act by impeding union members' rights to democratically choose their bargaining representative. Accordingly, the Court finds that, as a matter of law, preventing the secession of a local affiliate does not constitute a "legitimate objective" of a labor organization under LMRDA § 302 and, as such, the International may not impose a trusteeship to prevent Local 129's secession.

---

**7.** In point of fact, Plaintiffs are attempting to stifle democratic procedures.

**8.** The Brief in Support of Plaintiffs' Motion for a Temporary Restraining Order similarly

provides that the trusteeship "was imposed on Local 129 to prevent secession of the Local in violation of the constitution." [Brief, p. 1].

Despite the weight of precedent from other circuits, Plaintiffs argue that the absence of binding Sixth Circuit law leaves the Court free to fashion its own remedy. Plaintiff further argues that the Sixth Circuit's decision in *International Brotherhood of Boilermakers v. Olympic Plating Industries, Inc.*, 870 F.2d 1085 (6th Cir. 1989), suggests that, if given the opportunity, the Sixth Circuit would enforce trusteeships to prevent secession, so long as the International brought suit to enforce the trusteeship prior to a disaffiliation vote.[9] Having thoroughly reviewed the *Olympic* decision, however, the Court declines to accept Plaintiffs' argument.

*Olympic* involved a suit by the International Brotherhood of Boilermakers to enforce a trusteeship imposed by the International upon Local 852 pursuant to the Union Constitution and 29 U.S.C. § 462. Following Local 852's decision to disaffiliate and to recognize Local 63 of the Independent Workers of North America ("IWNA") as its bargaining representative, the International filed a three-count complaint: (1) alleging that Local 582 breached the Union Constitution by expending, dissipating, and transferring union funds; (2) alleging that Local 852 breached the Union Constitution by rejecting the trusteeship; and (3) demanding an injunction against Olympic, enjoining the employer from recognizing IWNA Local 63 as the bargaining representative of Olympic's unionized employees. During the pendency of the federal court action, the International also filed unfair labor practice charges with the National Labor Relations Board ("NLRB") against Olympic and IWNA Local 63. After concluding that the pending NLRB action would determine the authorized bargaining representative, and find-

ing that the NLRB complaint and the federal court action shared the same facts and issues of law, the district court granted Olympic's motion to dismiss as to all three counts and deferred to the jurisdiction of the NLRB.

On appeal the Sixth Circuit reversed as to Counts I and II, finding that federal courts, as opposed to the NLRB, have jurisdiction under § 301 over suits between a local and an international union to enforce the international union constitution. *Id.* at 1088. The Sixth Circuit further commented that regardless of the timing of a disaffiliation vote, an international retains the right "to recover its assets through the mechanics of a trusteeship." *Id.* Thus, *Olympic* stands for two principles: (1) that federal courts have jurisdiction over claims brought under § 301 of the LMRA; and (2) that regardless of whether an action to enforce a trusteeship is brought prior to, or subsequent to, a disaffiliation vote, an international may impose a trusteeship under 29 U.S.C. § 462 to prevent financial malpractice by a local. Neither of these principles, however, speaks to the dispositive question in the instant case, whether preventing the secession of a local constitutes a "legitimate objective" of a labor organization under LMRDA § 302.

In light of the fact that the *Olympic* decision does not address the issue of secession, and the uniform case law from the First, Seventh, Ninth, Tenth, and D.C. Circuits holding that preventing disaffiliation is not a proper purpose for a trusteeship, the Court finds that the International's attempt to impose a trusteeship over Local 129 did not constitute a "legitimate objective" of a labor organization under LMRDA § 302. Accordingly, the Court

---

9. Plaintiff relies on the following statement by the Sixth Circuit in *Olympic:*

> It is not significant, for purposes of the jurisdictional analysis, that the International may have lacked the authority to impose the trusteeship. It is true that the members of Local 852 voted to disaffiliate from the International before the International im-

> pressed its trusteeship upon the Local. However, regardless of the disaffiliation vote, the International retained the right to the assets of the Local and the appellees and the local should not be permitted to dissipate or expropriate those assets.

870 F.2d at 1088.

finds that Plaintiffs have failed to demonstrate any likelihood of success on the merits of their claim for injunctive relief and that Defendant is entitled to the dismissal of the instant action as a matter of law.

### IV. *CONCLUSION*

For all of the aforementioned reasons:

IT IS HEREBY ORDERED that Plaintiffs' Motion for a Temporary Restraining Order is DENIED.

IT IS FURTHER ORDERED that Defendant's Motion to Dismiss is GRANTED.

IT IS FURTHER ORDERED that this case be dismissed, in its entirety, with prejudice.