*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

UNIVERSITY OF MICHIGAN PROFESSIONAL
NURSE COUNCIL,

UNPUBLISHED
July 6, 2023

       Plaintiff,

and

DONNA CARNAHAN, KATHRYN J.
OPPENHEIM, DESIREE CONYERS, LYNN
DETLOFF, SANDRA DORSEY, SHAWN
REBECCA MAMMEL, APRIL THEA
PICKLESIMER, CATHERINE SCOTT, DEBORAH
TOTZKAY, and BARBARA VAN KAINEN,

       Plaintiffs-Counter-Defendants-
       Appellees,

v

No. 361618
Washtenaw Circuit Court
LC No. 21-00118-CL

MICHIGAN NURSES ASSOCIATION,

       Defendant-Counter-Plaintiff-
       Appellant,

and

UNIVERSITY OF MICHIGAN PROFESSIONAL
NURSE COUNCIL,

       Appellant.

Before: REDFORD, P.J., and O'BRIEN and FEENEY, JJ.

PER CURIAM.

-1-

If one takes a careful look at the caption in this case, an anomaly is readily apparent: the University of Michigan Professional Nurse Council is listed twice, once as a plaintiff and a second time as an appellant. While confusing, this is not a mistake and, in fact, it is at the heart of the dispute in this case. As will be explained in greater detail below, these are in essence two separate entities with the same name. Or, more precisely, it is a dispute between two groups laying claim to being in rightful control of the same entity: the local union representing nurses employed by the University of Michigan.

This dispute arises from a movement by the individual plaintiffs, who had been the elected officers of the Nurse Council, to disaffiliate the Council from its parent union, defendant Michigan Nurses Association (MNA), with a bitter fight ensuing. In fact, there was a vote of the membership in favor of disaffiliation, albeit with a low participation rate by the membership. The MNA imposed an emergency trusteeship and installed a set of appointed officers. The practical effect of this was to create two separate Nurse Council organizations, each claiming to be the legitimate representative of the nurses at the University of Michigan.

For ease of reference and discussion, we shall refer to them in this opinion as being two separate entities. The Nurse Council associated with the MNA will be referred to as UMPNC-MNA. And the Nurse Council that disaffiliated from the MNA under the leadership of the individual plaintiffs will be referred to as UMPNC-Independent.[1] Finally, UMPNC (without further designation) will be used to refer to the Nurse Council before the disaffiliation vote occurred as well as when a generic reference to the organization seems appropriate. As for the individual plaintiffs, the parties use different nomenclature. MNA refers to them as the "former officers," while the individual plaintiffs refer to themselves as the "elected officers."[2] To avoid suggesting that either side is correct on this point, the individual plaintiffs will simply be termed just that and the terms "elected officers" or "former officers" will be avoided in describing the individual plaintiffs.

MNA is a state-wide labor organization representing healthcare employees in collective bargaining including those employed by the University of Michigan healthcare system. The University employees are specifically represented by UMPNC-MNA as the local bargaining unit. The relationship between UMPNC and MNA was challenged by the individual plaintiffs in late 2020 and early 2021. A membership meeting was held via Zoom on January 2, 2021, which had low attendance and resulted in a vote for UMPNC to disaffiliate with MNA.

---

[1] Note, the names UMPNC-MNA and UMPNC-Independent are not used in the stylings of the captions of any of the litigation, each side using "UMPNC" reflecting each side's claim to be the sole legitimate organization representing the University healthcare employees.

[2] At some point in time, both terms are correct. The individual plaintiffs were the elected officers and are now former officers. The parties do not agree when the elected officers became former officers, but there is no need for us to determine when they became former officers.

On January 21, 2021, MNA invoked a provision in its by-laws to place UMPNC under an emergency trusteeship, thus effectively establishing UMPNC-MNA. MNA appointed members to the leadership positions on an interim basis until officer elections were held.

On February 1, 2021, UMPNC-Independent and the individual plaintiffs filed suit in Washtenaw Circuit Court. The complaint alleged breach of contract and sought declaratory judgment that UMPNC was no longer subject to MNA's authority and that MNA had no authority to place UMPNC under the trusteeship. MNA and UMPNC-MNA filed an answer, a counter-claim, and a motion for summary disposition. They sought an order for individual plaintiffs to return UMNPC's assets, property and rights to UMPNC-MNA, for individual plaintiffs to cease representing themselves as officers or members of UMPNC, and to disgorge any dues or payment from UMPNC members that had been received. They also filed a motion to dismiss plaintiffs' complaint. The counter-complaint also alleged that individual plaintiffs misappropriated UMPNC's name and identity.

On March 17, 2021, individual plaintiffs petitioned MERC to conduct a representation election.[3] This petition was done in the name of "University of Michigan Professional Nurse Council, Independent Union." MNA sought to have the petition dismissed, but MERC denied MNA's motion and proceeded to conduct an election by mail ballot over three weeks in September 2021. Ultimately, UMPNC-MNA won the representation election.[4]

While the election was pending, MNA and UMPNC-MNA took an appeal from the MERC decision to this Court, again seeking to dismiss the petition for a representation election. See *University of Michigan Regents v Michigan Nurses Ass'n*, unpublished opinion per curiam of the Court of Appeals, issued July 21, 2022 (Docket No. 358147). Because the representation election that MNA sought to prevent had already been held, this Court concluded that the issue was moot and dismissed the appeal. *Id.*, slip op at 4.

Meanwhile, in this case, the trial court held a hearing on the parties' cross-motions for summary disposition. The trial court issued an order granting summary disposition dismissing all claims by the parties. The trial court determined that the issues were moot in light of the results of the representation election. The trial court did order that UMNPC-Independent return all property belonging to UMPNC-MNA and/or MNA. Individual plaintiffs were also ordered to provide an accounting of the returned property.

MNA and UMPNC-MNA filed a motion for clarification and/or reconsideration. They took the position that their claims were not rendered moot. They argued that "the granting of both counter-motions had left the status of both sides' conflicting and irreconcilable claims unresolved, and that the lack of a clear decision by the court could exacerbate the lingering confusion and

---

[3] A petition for a representation election had previously been filed in January 2021. MERC dismissed the petition because it did not include the showing of interest by 30% of bargaining unit members as required by MCL 423.212(a).

[4] Approximately two-thirds of the employees participated in the election and UMPNC-MNA received almost 58% of the votes cast.

dissention in the bargaining unit." The trial court denied the motion, reaffirming its conclusion that the representation election resolved the dispute. Individual plaintiffs placed all assets, records, and other items in the UMPNC office and turned over the office key. The trial court accepted their accounting.

MNA and UMPNC-MNA now appeal and we affirm.

As stated in *Garrett v Washington*, 314 Mich App 436, 449-450; 886 NW2d 762 (2016):

> We review de novo whether an issue is moot. See *Thomas M Cooley Law Sch. v Doe 1*, 300 Mich App 245, 254; 833 NW2d 331 (2013). This Court does not decide moot issues. *Id.* "A matter is moot if this Court's ruling 'cannot for any reason have a practical legal effect on the existing controversy.'" *Id.* (citation omitted). "In order to appeal, a party must be an aggrieved party." *Kieta v Thomas M Cooley Law Sch*, 290 Mich App 144, 147; 799 NW2d 579 (2010). "On appeal, the litigant must demonstrate that he or she is affected by the decision of the trial court." *Id.* "An issue becomes moot when a subsequent event renders it impossible for the appellate court to fashion a remedy." *Id.*

It would seem logical that the place to start the analysis is to look to the claims made in the counter-complaint and the prayer for relief. MNA and UMPNC-MNA raised six counts in their complaint: (1) common law and statutory conversion, (2) fraudulent misrepresentation, (3) unlawful use of organization's name, (4) corporate officer malfeasance and breach of fiduciary duty, (5) violation of common law right to privacy, and (6) identity theft. The prayer for relief requested six remedies: (1) a preliminary and permanent injunction enjoining individual plaintiffs from using the UMPNC name, or similar name, and from representing themselves as officers or representatives or otherwise acting on behalf of UMPNC, (2) to return all MNA and UMPNC-MNA property, (3) to order individual plaintiffs to respond to any communication made to them regarding UMPNC with a statement that they are not members, officers, or otherwise represent, speak for, or control UMPNC, (4) a declaratory judgment that individual plaintiffs, as well as their agents, employees or attorneys, are not authorized to control, act or speak on behalf of UMPNC and may not represent themselves as members, officers, agents or attorneys of UMPNC, (5) to order individual plaintiffs to tender back to the payors or contributors any dues, fees, or other payments or contributions received as a result of having unlawfully representing themselves as members, officers, agents or representatives of UMPNC, and (6) award MNA monetary damages, costs and attorneys.[5]

---

[5] It should be noted that this last point arguably is not moot. But MNA only makes a generic request for damages in its complaint. It did briefly discuss the matter at the hearing on the motion for summary disposition in response to the trial court's question regarding whether there was an issue to be submitted to a jury. MNA's counsel responded "I can't answer that because we just don't know what—what happened to our assets." Counsel then went on to state "MNA was required to expand [sic] a considerable amount of money and effort and again in fighting the actions of the former officers, including this case. . . . But having said all that, I just want to repeat,

MNA's argument on appeal does little to persuade us that any of these claims or requested remedies remain viable. MNA's argument is set forth in three subsections. The first subsection argues that the representation election decided who would be the nurses' collective bargaining representative, but did not moot the claims in this case. It states that the

> disputed issues in this case boil down to the following: whether a dissenting group within a local union can declare the union to be "disaffiliated" from the parent union; whether they can appropriate title to and use of the local union's name, identity, and property; and whether they can undertake a concerted campaign to misrepresent to their fellow employees (and to the employer, courts, and agencies) that they continue as the elected officers of the original local union after they have abdicated their memberships and been replaced in accordance with the organization's governing Bylaws.

While these remain disputed issues between the parties, that does not mean that a court can, or should, provide a remedy at this juncture.

The first point is whether a dissenting group within a local union can declare the local union disaffiliated from the parent union. This certainly presents an interesting question. See, e.g., *Textile Processors, Int'l Union v Textile Processors Int'l Union, Local 129*, 49 F Supp 2d 569 (ED Mich, 1999) ("Although the Sixth Circuit has not addressed this precise issue, numerous other circuits have, uniformly finding that preventing the secession of a local affiliate does not constitute a legitimate objective of a labor organization."). See also *Int'l Brotherhood of Boilermakers v Local Lodge 714, Int'l Brotherhood of Boilermakers*, 845 F 2d 687, 694 (CA 7, 1988) ("The few cases that have opined on the question agree that a union's 'legitimate objects' in imposing a trusteeship do not include preventing the secession of its locals . . . . The ability of a local union to disaffiliate and join another union, like the ability of a consumer to switch to another seller, facilitates competition among unions.") Moreover, MERC has recognized the right of a local union to disaffiliate from the parent union. In fact, it did so in the case of a local nurses' union voting to disaffiliate from MNA. See *In the Matter of Wayne and Michigan Nurses Ass'n and Government Administrators Ass'n*, Case No. C94 B-33 (Opinion of ALJ Rouhac issued 4/27/1995). In that case, the Wayne County Professional Nurses Council (WCPNC) voted to disaffiliate from MNA and to affiliate with the Government Administrators Association (GAA). MNA filed an unfair labor practice charge against the employer (Wayne County) for recognizing GAA as the WCPNC's bargaining agent and refusing to bargain with MNA. The ALJ concluded that an affiliation vote does not need to be supervised by MERC. The ALJ also concluded that the proper procedural safeguards were followed in the disaffiliation vote. But, while an interesting question, because we find the matter to be moot, we need not resolve the issue.

There would, of course, remain the additional issue whether individual plaintiffs and their supporters went about the process of disaffiliating in the correct manner. But, even if they did not, that issue is certainly now moot because MNA and its affiliated local bargaining unit continue to,

_____

I don't think damages are the main issue here." And, more to the point, MNA does not argue in its brief on appeal that there is an issue outstanding relating to an award of monetary damages.

or perhaps once again, represent U of M's nurses. That is to say, the representation election established that the dissenting group were, in fact, in the minority.[6] Accordingly, there is no remedy to be fashioned.

The second point is whether the dissenting group can appropriate title to and use of the local union's name, identity, and property. MNA frames this question assuming that the dissenting group is in the minority and, more importantly, that individual plaintiffs did not follow the appropriate procedure in disaffiliating UMPNC from MNA. As just discussed, that remains an open question. There are two scenarios, either of which might ultimately be established if the trial court were to reach the merits: first, that the proper procedure was followed and that UMPNC-Independent was a legitimate entity and represented the continuation of UMPNC; or, second, that the proper procedure was not followed and UMPNC-Independent was not a legitimate entity nor a continuation of UMPNC, with UMPNC-MNA being the legitimate continuation of the local union.

If the first scenario is the correct one, then UMPNC-Independent (and individual plaintiffs as its officers) had every right to the continued use of the name, identity, and property of UMPNC. But if the second scenario is correct, then UMPNC-Independent (and individual plaintiffs) was not entitled to the continued use of the name, identity, and property of UMPNC, and UMPNC-MNA was entitled to have UMPNC-Independent return its property and stop using the name and identity. But this is what happened after MNA won the representation election. Once again, there is no remedy to be fashioned.

Turning to the third point, MNA asks whether the dissenting group "can undertake a concerted campaign to misrepresent to their fellow employees (and to the employer, courts, and agencies) that they continue as the elected officers of the original local union after they have abdicated their memberships and been replaced in accordance with the organization's governing Bylaws." As with the previous two issues, this assumes that either UMNPC had no right to disaffiliate from MNA or, even if it did, it did not do so in the appropriate manner.[7] But, as with the previous point, individual plaintiffs have accepted the results of the representation election and no longer engage in this conduct, be it proper or improper. There is no remedy to be fashioned.

MNA also argues that counsel for individual plaintiffs conceded at the October 14, 2021 hearing that the representation election did not moot the issues in this case. MNA is reading

---

[6] Or, more precisely as noted above, the dissenting group was in the minority of those who cast ballots in the representation election. Because only two-thirds of the membership cast ballots and 58% those voted in favor of MNA, that does not equal a majority of the entire membership. It is possible that those wishing to disaffiliate were actually in the majority, but there was a failure to get out the vote.

[7] It also assumes that individual plaintiffs did abdicate their memberships. Individual plaintiffs take the position that, while they did abdicate or resign their membership in MNA, they did not leave UMPNC itself. MNA's claim that they did (and that they were properly replaced as officers by MNA) ultimately circles back to the question whether UMPNC properly disaffiliated itself from MNA.

counsel's comments out of context or, perhaps, giving them a selective interpretation. In one portion, counsel did disagree with the trial court regarding res judicata. The trial court asked whether "aren't those the same kind of issues of who is the bargaining unit, isn't that kind of almost res judicata?" Counsel disagreed, arguing that MERC (and therefore the representation election) resolved who was the collective bargaining representative, but then points out that the issues of "the internal structure, the internal issues of the union which MERC has no jurisdiction to decide and that would be within the jurisdiction of this court and that's why it was filed with this court regarding the trusteeship, whether the trusteeship was valid and—because MERC doesn't have the jurisdiction to decide that issue." MNA overlooks the next statement by counsel: "But, because of the practical consequence of the election, my client has offered to turn everything over to the MNA, not because of the merits of their claims in this case but just for the practical purposes that that election should resolve this dispute." The proper interpretation of counsel's comments would be that the representation election would not resolve the claims for res judicata purposes, but it had the effect of individual plaintiffs abandoning their efforts to disaffiliate and return everything to MNA.

MNA then turns to another comment by counsel a bit later in the hearing where he states that individual plaintiffs "are indisputably the elected officers of UMPNC" and that there "are no other elected officers of UMPNC." Counsel goes on to argue that when MNA's counsel says that individual plaintiffs "represent themselves falsely as the elected officers of UMPNC they are undisputedly the elected officers of UMPNC. There are nobody—there's nobody else that's been elected." The remaining dispute here is not substantive, but rather it is the on-going semantic games over what label to apply to individual plaintiffs. As individual plaintiffs' counsel points out, even in the portion quoted by MNA, individual plaintiffs were the elected officers and, at least during this dispute, there were no other elected officers, merely those appointed by MNA as part of its imposed trusteeship. Once again, while there may be an unresolved issue of when individual plaintiffs became former officers, they are no longer claiming to be officers of UMPNC and, therefore, there is no remedy to be fashioned.

Finally, MNA argues that this Court's opinion in the appeal from the MERC decision regarding whether to hold a representation election was moot because the election had already occurred does not mean that the issues raised in this case are moot. MNA puts significance on this Court's statement that that "appeal is therefore limited to the issue of whether MERC erred by permitting the election." *University of Michigan Regents*, slip op at 2. MNA endeavors to extend this reasoning to conclude that the issues raised in this case are not moot. While it is certainly true that this Court's prior decision does not render moot the issues in this case, it does not require the conclusion that the converse is true. Whether the decision to hold an election is moot once the election was held does not control whether the issues presented in this case are moot. What renders the issues here moot is the result of that election AND its effect of having individual plaintiffs abandon their efforts to disaffiliate UMPNC from MNA.

For these reasons, we conclude that the trial court correctly ruled that the claims in this case are now moot.

But that does not end the matter. MNA also argues that, even if moot, the trial court should nevertheless have resolved MNA's claims under the exception to the mootness doctrine regarding issues of public significance that may recur yet escape judicial review. See *In re Indiana Michigan*

*Power Co*, 297 Mich App 332, 340; 824 NW2d 246 (2012). As the United States Supreme Court explained in *Kingdom Technologies, Inc v United States*, 579 US 162, 170; 136 S Ct 1969; 195 L Ed 2d 334 (2016), the "exception applies only in exceptional situations, where (1) the challenged action[is] in its duration too short to be fully litigated prior to cessation or expiration, and (2) there [is] a reasonable expectation that the same complaining party [will] be subject to the same action again." (Citations and quotation marks omitted; brackets in original.) We are not persuaded that MNA has established the applicability of this exception.

MNA acknowledges that the factual circumstances presented in this case are unusual. But it then states that it is not unusual for a dissatisfied group of union members to want to replace their incumbent union with a different union. MNA posits that the normal procedure would be for the dissenters to renounce their union membership and then seek to establish a new independent union or a local unit of a different union. MNA then argues that sanctioning the use of deception and misrepresentation in the process would be harmful to the public interest in labor peace and workplace democracy.

MNA points to no facts to establish that the process it outlines is indeed the "normal" way to achieve individual plaintiffs' goal. In fact, outside of a right-to-work environment, it would seem impossible to do this because, under a closed shop, the employees seeking to establish a new union could not resign their membership in the existing union. And, as suggested by *Int'l Brotherhood of Boilermakers, supra*, local unions are entitled to disaffiliate from one parent union and either become independent or affiliate with a different parent union. Moreover, declining to resolve this issue does not in any way sanction the use of deception and misrepresentation, especially given that it has not been established that this has occurred. Finally, this Court rejected MNA's similar argument in the prior appeal, concluding that "the circumstances in this case were extraordinary" and as "such, we must conclude the factual circumstances are not publicly significant. . . ." *University of Michigan Regents*, slip op at 3.

Second, even being generous to MNA and agreeing that its concerns present an issue of public importance, MNA makes no effort to establish that either of the other two requirements are met here. MNA makes no argument to support a conclusion that the issues are likely to recur nor, even if it does recur, that it would inevitably escape judicial review.

The final argument posed by MNA is that the trial court erroneously granted dispositive cross-motions where the claims were irreconcilable and contradictory. This argument is specious. While it is true that the claims raised in individual plaintiffs' complaint and those raised in MNA's complaint are contradictory, that does not mean that it was somehow legally impossible to dismiss all of the claims. Had the trial court granted summary disposition in favor of both sides on all claims, declaring everyone to be a winner, that would have produced an irreconcilable conflict.

But declaring all claims to be moot based upon intervening events does not create an inherent contradiction. It would be akin to two children arguing over who is entitled to the last piece of cake. They go to their parent to resolve the dispute and, before the parent can issue a decision, the family dog eats the cake. It simply no longer matters who was right and who was wrong and the parent no longer needs to resolve the dispute. It is now moot.

In conclusion, the trial court summed up this matter well in its opinion denying MNA's motion for reconsideration or clarification:

> You [MNA] want me to spank someone. I'm not going to do it, sir. I respect there was an election. They had the results of the election. I respect the democratic process. I think it's over. That's what I addressed, and if you—I think you, you know, you want me to say somebody's bad and somebody's not bad, and I think— you know, I don't—I really think this is a fight for power within a Union, and I am not going to get in and make value judgments about whether something was bad or someone was right, or someone was wrong. You had a fight within your Union, you had an election, and I respect the election results without comment.
>
> If you can convince two out of three judges on a [sic] the Court of Appeals to say I'm supposed to tell somebody they're bad and they're wrong, I'll do it. But until you do that, I don't think it's—I don't believe it's unclear. . . . I think one side wants to keep litigating and they want to rub somebody's nose in it, and the other side says, "It's over, we accept it."
>
> So, the motion for reconsideration is denied and maybe you'll get a decision, I've got about three more years left on the bench before I'm aged out, maybe I'll get the chance to look at it again, and if not, maybe I'll read about it in the paper if it all comes down afterwards.
>
> * * *
>
> I wish you well. I wish you good luck. I'm not going to do anything else. Go on up. If they tell me to do something else, of course I'll accept that, but that's— I've given you what I've got and if the Court of Appeals says, "Judge, you got to do more," I'll do it. Until then, I wish you well. [4/21/22 hearing Tr, pp 11-12.]

The trial court was correct. The matter is moot.

Affirmed. Plaintiffs-counter-defendants may tax costs.

/s/ James Robert Redford
/s/ Colleen A. O'Brien
/s/ Kathleen A. Feeney